IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

MARSHALL ROM,

          Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner, Social Security
Administration,

          Defendant.

Case No. 15-CV-402-FHM

**OPINION AND ORDER**

Plaintiff, Marshall Rom, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's July 1, 2013, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") David W. Engel was held June 18, 2014. By decision dated August 4, 2014, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 8, 2014. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 19 years old on the alleged date of onset of disability and 22 on the date of the ALJ's denial decision  He has a high school education and formerly worked as tank crewman.  He claims to have been unable to work since September 9, 2010 as a result of residuals of jet fuel poisoning to include alleged vertigo, adjustment disorder with depressed mood, and a cognitive disorder.

## The ALJ's Decision

The ALJ determined that Plaintiff is able to perform a full range of medium, light, and sedentary exertional work.  He is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts.  He is able to understand, remember, and carry out simple instructions in a work-related setting, and is able to interact with co-workers and supervisors under routine supervision.  [R. 23].

Although Plaintiff is unable to perform his past relevant work, based on the testimony of a vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail). [R. 28-29].

## Plaintiff's Allegations

Plaintiff asserts that the ALJ's RFC finding is flawed because it does not contain work-related limitations for all of his severe impairments; the jobs identified by the vocational expert as ones he can perform exceed his capacity for mental work-related tasks; and the ALJ failed to conduct a function-by-function assessment of his impairments in formulating the RFC.

## Analysis

### RFC Determination

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental

impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration.  See 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C).  These "paragraph B" limitations are not an RFC assessment, rather they rate the severity of mental impairments at steps 2 and 3 of the evaluative sequence.

In performing the PRT, the ALJ found Plaintiff had moderate difficulties in concentration, persistence, or pace.  [R. 22].[2]  Plaintiff argues that the RFC limitation to understanding, remembering, and carrying out simple instructions does not adequately address this finding.  Plaintiff also argues that the RFC limitation relates to work skills, rather than being a work limitation.

The court finds no error in the ALJ's failure to include his PRT finding of moderate limitations for concentration, persistence, or pace in the RFC.  The PRT findings are not expressed in work-related limitations and consequently are not appropriate for inclusion in hypothetical questioning of a vocational expert.  See e.g. Chrismon v. Colvin, 531 Fed.Appx. 893, 897-898 (10th Cir. 2013)(discussing difference between PRT findings and RFC findings).  Rather, it is appropriate to include the work-related limitations that flow from those findings, which the ALJ did in this case.  The work-related mental limitations were expressed in the mental RFC assessments completed by the state agency Disability Determination Service (DDS) reviewing experts which the ALJ incorporated into the RFC.

Mental RFC assessments were completed by DDS consultants R.D., Ph.D, and

---

[2] Plaintiff is critical of the ALJ's PRT findings in that he did not specify how persistence and pace were affected by Plaintiff's mental impairments. [Dkt. 13, p. 3].  The PRT evaluates concentration, persistence, or pace, not concentration, persistence and pace as Plaintiff characterizes it.  Plaintiff cites no authority requiring that these attributes be evaluated separately.  Moreover, Plaintiff does not point to any evidence in the record that would support greater limitation than the ALJ found to exist.

K.D.M., Ph. D. based on their review of the medical record. [R. 73-75, 88-89]. These assessments contain a series of questions which are identified as being directed at determining the ability to perform sustained work activities. [R. 73, 88]. Those questions include the ability to understand, remember, and carry out instructions of varying degrees of complexity as well as a number of other work-related abilities. Both consultants summarized their mental RFC conclusions as including the ability to perform simple and some complex tasks. [R. 75, 89]. The same mental limitations are included in the ALJ's RFC, although phrased differently. The court finds no error in the formulation of the ALJ's RFC finding.

Plaintiff asserts that the ALJ failed to appreciate that when vertigo occurs, he is completely precluded from performing any task. Plaintiff posits the question: why wasn't that addressed by the court [sic]?" [Dkt. 13, p. 4]. Plaintiff points to his testimony that he has trouble with dizziness, has fallen down many times, and that he has headaches every day for most of the day. *Id.* The ALJ dealt with these claims, finding Plaintiff's allegations were not entirely credible. The ALJ noted that following Plaintiff's accident in November 2011, he suffered, among other things, vertigo and daily headaches. However, by June 21, 2012, Plaintiff had begun going back to the gym. In August 2012, he reported an improvement in symptoms, a decrease in dizziness, and that he was able to exercise six times a week despite dizziness. In August 2013, Plaintiff reported to the consultative examiner he was losing balance only once a week. The ALJ noted that although Plaintiff testified to having headaches, he was not receiving treatment for them. [R. 25]. Plaintiff has not challenged the ALJ's credibility finding, and the court finds it to be supported by

substantial evidence. The court further finds that Plaintiff has not shown that the safety limitations included in the RFC are insufficient to account for his vertigo.

The court finds that the ALJ's discussion of the evidence and his RFC conclusions are sufficiently thorough and supported by substantial evidence.

### Jobs Identified by the Vocational Expert

Plaintiff argues that the jobs identified by the vocational expert do not constitute substantial evidence to support the ALJ's denial decision because the jobs require reasoning beyond his RFC.

The Dictionary of Occupational Titles (DOT) rates the General Educational Development (GED) required of the worker for satisfactory job performance. GED addresses: reasoning development; mathematical development; and language (reading, writing, speaking) development. DOT Appendix C– Components of the Definition Trailer, 1991 WL 688702. Reasoning development is rated from 1 to 6, with 6 requiring the most advanced reasoning skills. *Id.* The DOT assigns the jobs identified by the vocational expert a reasoning level 3 which requires the worker to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, or a reasoning level 2 which requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. DOT App. C, 1991 WL 688702; DOT # 318.687-010; DOT # 706.684-022; DOT # 249.587-018. According to Plaintiff, the RFC limitation of being able to understand, remember, and carry out simple instructions in a work-related setting limits him to performing only reasoning level one jobs which require only the ability to apply commonsense understanding to carry out simple one or two step

6

instructions. While reasoning level one seems to be the closest match to the ALJ's RFC, reasoning level is not the only measure in the DOT of the complexity of a job.

The vocational expert identified jobs with an SVP (specific vocational preparation) rating of 2 as being responsive to the ALJ's hypothetical question that included the limitation to understand, remember, and carry out simple instructions in a work-related setting. [R. 56, 58]. The SVP rating addresses the time required by a typical worker to learn to perform a job. The training for SVP may be acquired in a school, work, military, institutional, or vocational environment, but does not include the time for a fully qualified worker to become oriented to the special conditions of a new job. DOT, Appendix C–Components of the Definition Trailer, Specific Vocational Preparation, 1991 WL 688702. The DOT rates the SVP for jobs from 0 to 9, with 9 being the most time to learn the job. SVP 2 is anything beyond short demonstration up to and including one month. *Id.* The fact that the vocational expert identified jobs responsive to the hypothetical question in terms of SVP signifies that the vocational expert understood SVP to be an appropriate indicator of the complexity of the job.

In addition, the court notes that the DOT occupational code also says something about the characteristics and complexity of a job. The first three digits of the occupational code, or DOT number, for a job refer to the type of industry involved and the particular category of work within that industry. The middle three digits are worker functions. A separate digit expresses the workers relationship to each of these three groups: data, people, and things. Worker functions requiring more complex responsibility and judgment are given lower numbers. The lowest complexity for each group would be expressed by middle three digits of 687. *See DOT–* Parts of the Occupational Description, 1991 WL

645965. The court notes that the middle three digits for the jobs identified in this case are: dishwasher 687; small product assembler 684; and document preparer 587. The part of the DOT number for these jobs thus signify that the jobs have a low level of complexity. The point is to note that the reasoning level is not the only means the DOT has of addressing job complexity. It is not for the court to say that SVP and the DOT number designations are not appropriate ways to identify jobs that fit the hypothetical question and RFC findings. The vocational expert, not the court, has the expertise to interpret the information in the DOT. *See Segovia v. Astrue*, 226 Fed.Appx. 801, 804 (10th Cir. 2007)(unpublished)(finding that a vocational expert's testimony can clarify how broad DOT classifications apply to an individual case). The court finds that the jobs identified by the vocational expert with reasoning level two and three are not clearly beyond Plaintiff's RFC so as to require remand for further consideration.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 23rd day of June, 2016.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE